## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**JOASIA HOLOTKA,**

                **Plaintiff,**

      **v.**                              **1:13-cv-0650-WSD**

**THE FIRST LIBERTY**
**INSURANCE CORPORATION,**

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on The First Liberty Insurance Corporation's ("Defendant" or "First Liberty") Motion to Join [17] Yehuda Smolar ("Smolar") as a counterclaim defendant in this action.

## I.      BACKGROUND

On June 13, 2005, Plaintiff Joasia Holotka ("Plaintiff" or "Holotka") purchased real property located at 3620 Cloudland Drive NW, Atlanta, Georgia (the "Property"). (Holotka Aff. [22.1] ¶¶ 3-4). Smolar has an equitable interest in the Property.[1]

On August 29, 2005, Smolar applied with First Liberty for insurance on the Property. (Bagley Aff. [24.1] ¶ 7 & Ex. 3). The application names Plaintiff and

---

[1]      Plaintiff has not specified the interest Smolar holds.

Smolar as the named insureds, and it states that the Property is their primary residence.  The application is signed by Smolar.  Based on the application, First Liberty issued a LibertyGuard Deluxe Homeowners Policy ("the Policy") for the Property.  The Policy was effective August 30, 2005, and Plaintiff and Smolar were listed as the named insureds.  On July 27, 2010, First Liberty renewed the Policy for the effective period of August 30, 2010, to August 30, 2011. (Compl. [1.1] ¶ 4 & Ex. A).

On April 25, 2011, the Property and certain property within it suffered damage, which Plaintiff asserts was caused by a tornado and a fallen tree. (Compl. ¶ 7).  On April 26, 2011, Plaintiff and Smolar filed a claim under the Policy, seeking coverage for the total loss of the home.  (Holotka Aff. ¶ 7; Bagley Aff. ¶¶ 4-6 & Exs. 1-2).

On May 12 and May 20, 2011, First Liberty issued two checks, payable to "Yehuda Smolar & Joasia Hollotka [sic]," in the amounts of $1,910.00 and $8,405.75, for damage covered by the Policy (the "Policy Payments").  [17.7; 17.8].  Smolar endorsed the checks by signing them, noting: "For deposit only Acct [sic] of Joasia Holotka."  (Id.).

On July 14, 2011, Plaintiff and Smolar submitted a Proof of Loss for the April 25th storm damage, in the amount of $609,363.60 (the "Proof of Loss

2

Claim").  [8 at 11-13; 24.3].  The Proof of Loss Claim, signed by Plaintiff and Smolar, represents that Plaintiff is the "title owner," and Smolar is the "equitable owner," of the Property.  (Id.).

On November 7, 2011, and later on August 2, 2012, First Liberty denied the remainder of Plaintiff and Smolar's Proof of Loss Claim.  (Holotka Aff. ¶¶ 16-17).

On January 11, 2013, Plaintiff filed a Complaint in the State Court of Fulton County, Georgia, asserting claims for breach of the Policy and for First Liberty's bad faith in denying the Proof of Loss Claim. [2]  On February 28, 2013, First Liberty removed the Fulton County action to this Court based on diversity of citizenship.  [1].

Also on February 28, 2013, First Liberty filed its Answer and Counterclaim [5], seeking the return of $10,315.74—the amount it paid to Plaintiff and Smolar during its investigation of the loss and before it denied the Proof of Loss Claim. First Liberty argues that it is entitled to recover the funds it advanced to Plaintiff and Smolar because: (i) the damage Plaintiff and Smolar allege was caused by the April 25th storm actually was the result of the "differential settlement" of the house structure, an occurrence that is specifically excluded from coverage under

---

[2]    No. 13EV016509E.

3

the Policy;[3] and (ii) Plaintiff and Smolar breached their duties under the Policy to cooperate with the investigation of their claim in concealing or by misrepresenting certain material facts about the loss they claimed, including by concealing the observations, findings and opinions of Don Shaver, a civil engineer hired by Plaintiff and Smolar to inspect and evaluate the home after the April 25th storm. After Shaver was disclosed during Smolar's deposition, Plaintiff and Smolar prohibited First Liberty from contacting Shaver about his inspection and findings. (Counterclaim ¶¶ 5-8, 11).

On May 1, 2013, First Liberty moved to join Smolar as a necessary party to this action.

## II.   DISCUSSION

Rule 13(h) of the Federal Rules of Civil Procedure states that Rules 19 and 20 govern the addition of a person as a party to a counterclaim.  Fed. R. Civ. P. 13(h).  Rule 19 provides that an absent party is necessary, and may be joined as a party, if:

---

[3]   First Liberty asserts that April 25th storm did not materially change the condition of the home, except for some damaged roofing shingles and gutters from the fallen tree; that the primary cause of the damage to the home was differential settlement of the foundation, which had occurred over a long period of time; that Plaintiff and Smolar were aware of the condition; and that the differential settlement was caused by faulty design, specifications, workmanship, grading, compaction, materials or maintenance conditions, which is specifically excluded from coverage under the Policy.  (Counterclaim ¶¶ 1-4).

      (A) in that person's absence, the court cannot accord complete relief among existing parties; or

      (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

            (i) as a practical matter impair or impede the person's ability to protect the interest; or

            (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).  If the absent party is deemed necessary, joinder, if feasible, is required.  Fed. R. Civ. P. 19(a)(2).

Here, Plaintiff and Smolar contracted with First Liberty for the insurance coverage provided in the Policy and which Plaintiff claims covered the property damage caused by the April 25th storm.  This action centers on an alleged breach of the Policy and the duties owed by Defendant, Plaintiff and Smolar—both named insureds—under the Policy.  Smolar and Plaintiff initially asserted their claim under the Policy and hired Shaver to inspect and evaluate the damage to their home.  When Smolar was deposed he disclosed, for the first time, that Shaver had conducted an inspection of the Property after the April 25, 2011, storm damage and it appears this damage assessment was used to assert the claims in this case.  The Policy requires Smolar and Plaintiff to cooperate with the investigation of the loss

claimed.[4]  The Policy Payments were made by First Liberty to Plaintiff and Smolar in their capacity as named insureds under the Policy.

Smolar has a central interest in the Policy at issue in this litigation and his conduct is central to the resolution of this dispute.  He is a named insured, he actively participated in the investigation and assertion of the damage claim at issue in this action, and his actions are a basis for First Liberty's decisions to deny coverage and to seek recovery of the funds advanced to Smolar and Plaintiff.  The Court concludes that complete relief cannot be accorded among the existing parties without Smolar's addition as a party in this case.  As a named insured and the party which contracted with First Liberty for the Policy, Smolar's participation in this action as a party is a necessary.  See, e.g., Bry-Man's, Inc. v. Stute, 312 F.2d 585 (5th Cir. 1963) (where two or more parties are joint obligees, they are necessary

---

[4]     A loss is excluded from coverage under the Policy if "one or more 'insureds' have intentionally concealed or misrepresented any material fact or circumstance." [1.3 at 4].  The Policy's requirements thus apply jointly to Holotka and Smolar, such that recovery would be barred under the Policy if either insured engaged in wrongdoing.  See, e.g., Richards v. Hanover Ins. Co., 299 S.E.2d 561 (Ga. 1983) (Under Georgia law, whether an innocent insured can recover under a policy despite wrongdoing of her co-insured "depends on whether the parties to the contract intended the obligations of the co-insureds to be joint and several."); Brown v. Ohio Cas. Ins. Co., 519 S.E.2d 726, 728-729 (Ga. Ct. App. 1999) (where the policy excluded coverage for intentional loss committed by "an insured," innocent insured could not recover for loss caused internationally by co-insured because the phrase "an insured" creates a joint obligation between co-insureds).

6

parties in an action for enforcement of that obligation);[5] <u>Harrell & Sumner</u>
<u>Contracting Co., Inc. v. Peabody Petersen Co.</u>, 546 F.2d 1227, 1228-29 (5th Cir.
1977) (Absent party, a joint venturer with plaintiff, was a necessary party because
"any obligation which might be owed by defendants would be owed to plaintiff
and the [absent party] jointly pursuant to the terms of their contract."); <u>Carnero v.</u>
<u>Boston Scientific Corp.</u>, 433 F.3d 1, 18-19 (1st Cir. 2006) (subsidiary was
necessary where it was a signatory to the agreement, it paid the plaintiff, and it
allegedly breached the contract); <u>Burger King Corp. v. Am. Nat'l Bank of Trust</u>
<u>Co. of Chicago,</u> 119 F.R.D. 672, 675 (N.D. Ill. 1988) ("If the absent party has a
legally protected interest in the subject matter of the action—i.e., he is a party to a
contract at issue—he falls squarely within the terms of Rule 19(a)(2)."); Wright,
Miller & Kane, Federal Practice and Procedure: Civil 3d § 1613 ("Since it
typically is in the interest of the obligees to join in the enforcement of their
common right, this requirement [that absent obligees be joined] does not impose
any hardship, especially in light of the court's power to join an absent person as an
involuntary plaintiff."); <u>cf.</u> <u>Brackin Tie, Lumber & Chip Co., Inc. v. McLarty</u>
<u>Farms, Inc.</u>, 704 F.2d 585, 587 (11th Cir. 1983) ("[A]ll joint obligors should be

---

[5]     In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en
banc), the Eleventh Circuit adopted as binding precedent all decisions of the
Former Fifth Circuit issued before the close of business on September 30, 1981.

joined in order that there may be a complete determination of the controversy, provided they are subject to the jurisdiction of the court as to service of process, and their joinder would not destroy federal jurisdiction.") (quoting 3A Moore's Federal Practice, ¶ 19.11 (3d ed. 1979)); Laker Airways, Inc. v. British Airways, PLC, 182 F.3d 843, 848 (11th Cir. 1999) ("[A] joint tortfeasor will be considered a necessary party when the absent party 'emerges as an active participant' in the allegations made in the complaint that are 'critical to the disposition of the important issues in the litigation.'") (quoting Haas v. Jefferson Nat'l Bank, 442 F.2d 394, 398 (5th Cir. 1971)).

The Court has personal jurisdiction over Smolar, and because Plaintiff and Smolar are both Georgia citizens, Smolar's joinder does not prevent the Court from exercising of subject-matter jurisdiction over this case.  See Fed. R. Civ. P. 19(a)(2).

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that The First Liberty Insurance Corporation's Motion to Join [17] Yehuda Smolar is **GRANTED**.

**SO ORDERED** this 2nd day of October, 2013.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE